IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL A. GRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) Civil Action No. 7:09cv0282 | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) By: Michael F. Urbanski | |
| Commissioner of Social Security, ) United States Magistrate Judge | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Michael A. Gray ("Gray") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits under the Social Security Act (the "Act"). Gray seeks an award of disability benefits based on impairments related to his low back pain, with a disability onset date of September 30, 2005. In this appeal, Gray claims that the Commissioner erred by not according controlling weight to the opinions of her treating orthopedic specialist, Dr. James M. Lovelace, and chiropractor, Dr. Holly Welty-Miller, each of whom believe that Gray's low back pain prevent him from performing any work. In fact, there are no opinions from any treating sources that state that Gray can work, and the state agency physicians, upon whom the Administrative Law Judge ("ALJ") relies, performed their reviews without the benefit of the disability opinion of treating orthopedic specialist Dr. Lovelace. Under these circumstances, consideration of the treating physician rule compels the conclusion that the Commissioner's decision is not supported by substantial evidence. As such, this case is **REMANDED** for further administrative consideration, including a consultative examination of

Gray by a specialist. Accordingly, plaintiff's Motion for Summary Judgment (Dkt. # 16) is **GRANTED** and defendant's Motion for Summary Judgment (Dkt. # 20) is **DENIED**.[1]

**I**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401.

---

[1] A hearing on the pending motions was held in this matter on June 8, 2010. As such, plaintiff's Motion for Hearing (Dkt. # 18) is **DENIED** as moot.

2

If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[2] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[2] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

II

On the claimed disability onset date, Gray was 39 years old. Gray attended school to the eighth grade, and did not obtain a General Equivalency Diploma ("GED"). Gray's work history consists of manual labor, operating a sander in a furniture plant, driving a dump truck and working as a roofing helper for a home improvement firm, and operating a mower on the interstate highway for a contractor. (Administrative Record, hereinafter "R." 28-30.) Gray testified that his back problems gradually began in 2004 after he fell while trimming a tree. (R. 32.) Gray claims that he cannot sit, stand or walk for very long due to his low back pain, which radiates down his left leg. (R. 31-34.) Gray's application for benefits was denied by the Commissioner initially based on a medical records review by Dr. Frank Johnson on January 8, 2007 (R. 53, 224-230), and on reconsideration based on a medical records review by Dr. Michael Hartman on April 26, 2007 (R. 54, 245-251). An administrative hearing was convened before an ALJ on August 14, 2008. (R. 24.) In determining whether Gray was disabled under the Act, the ALJ found that he was severely impaired by his degenerative disc disease and degenerative joint disease. (R. 15-16.) Nevertheless, the ALJ concluded that these impairments were not totally disabling, and that Gray retained the RFC to perform a range of light work. (R.17.) In making that finding, the ALJ noted that Gray alleged an onset date of September 30, 2005, but there is no evidence that he was injured or his condition worsened around that date. Rather, the ALJ observed that he was working as a mower for a contractor mowing grass on the interstate highways and was laid off in September, 2005. (R. 18.) The ALJ found that Gray could not return to work at the exertional level of his past relevant work, but concluded at step five that there were a significant number of jobs in the national economy that a person with his impairments could perform, and thus he was not disabled. (R. 22-23.)

Gray sought review by the Appeals Council, which denied his request for review on May 28, 2009. This appeal was filed in federal court on July 10, 2009. The parties filed cross motions for summary judgment motion, and oral argument on the motions was held on June 8, 2010.

**III**

The earliest medical records in the administrative record date from May, 2005, when Gray was seen by Dr. Matthew S. Kaatz, a family physician, for acute low back pain of two weeks duration, which he said was caused by moving some heavy landscaping rocks. (R. 276.) An x-ray of the lumbar spine revealed no acute osseous abnormality. (R. 193.) He was prescribed pain and anti-inflammatory medications and a TENS unit. After May, 2005, Gray was not seen again for back pain until January 21, 2006, when he presented himself to the Pulaski Community Hospital emergency room with back pain radiating to his left leg, reporting that he had injured his back the day before "pushing a truck of wood." (R. 205, 207.) The ER triage assessment noted that Gray had normal sensation in his lower extremities. (R. 207.)

A month later, Gray again appeared at the Pulaski Community Hospital ER, this time because he dropped a piece of wood on his foot while banking his wood stove. (R. 201.) Gray was referred to Dr. Lovelace, an orthopedist, for foot pain. Although Dr. Lovelace's records are difficult to decipher, it does not appear that Gray complained of back pain to Dr. Lovelace during visits with him concerning his foot during February, March and April, 2006. (R. 238-40.) The first reference to back pain in Dr. Lovelace's records is associated with a visit on May 2, 2006, at which time Gray complained of bilateral knee and low back pain. (R. 237.) During visits over the next few months, Gray continued to complain of low back pain, and Dr. Lovelace noted possible left leg radiculopathy and ordered a lumbar spine MRI and physical therapy. (R. 236-37.) Physical therapy was conducted during June, 2006 to relieve severe left paraspinal muscle spasms. (R. 197.) On

July 14, 2006, Gray reported to Dr. Lovelace that physical therapy was of no help. (R. 235.) Dr. Lovelace noted positive findings on straight leg raising tests[3] of Gray's left leg at that time, a finding which is reflected in many of Dr. Lovelace's notes after this date. (R. 232, 234, 235, 264, 265, 285.) A lumbar spine MRI taken on July 19, 2006 noted "mild posterior disc space narrowing at L5-S1 with a small midline subligamentous annular bulge with a slight midline disc protrusion. This is neurologically insignificant and does not affect the lumbar theca or the lateral recessus. . . . Small to moderate synovial effusions are present in the L3-4 and L4-5 facets bilaterally." (R. 243.) Dr. Lovelace referred Gray to Dr. Welty-Miller, a chiropractor, for treatment on August 25, 2006. (R. 234.)

Gray was seen in Dr. Welty-Miller's chiropractic clinic for his low back pain more than one hundred times over the next two years, and the accompanying notes frequently reflected moderate to severe muscle spasm and tender lumbrosacral spine. On February 8, 2007, Dr. Welty-Miller wrote the Social Security Administration ("SSA") opining that Gray could not work at any exertional level, and explained the clinical basis for her opinion as follows:

> Upon examination utilizing chiropractic tests, we did note areas of severe muscle spasm and nerve root irritation throughout his left lower lumbar spine region. AROM of the L/S is limited and painful in all directions, SLR positive on the left at 35 degrees of hip flexion. MRI of the lumbar spine reveals moderate degenerative disc disease at L5-S1 with a small midline annular bulge. There is also a bilateral synovial facet effusion at L3-4 and L4-5.

(R. 244.) Dr. Welty-Miller has continued to treat Gray, and wrote a similar disability opinion letter on December 29, 2008, after the ALJ's decision, which was sent to the Appeals Council. (R. 287.)

After the August, 2006 referral for chiropractic treatment, Dr. Lovelace saw Gray an additional six times over the next two years. At the time of the ALJ's decision, the administrative

---

[3] A positive straight leg raising sign, also known as Lasegue's sign, is indicative of sciatica when "flexion of the hip is painful when the knee is extended, but painless when the knee is flexed." Dorland's Illustrated Medical Dictionary, 1700 (30th ed. 2003).

6

record contained records of visits to Dr. Lovelace on October 6, 2006, January 8, 2007, February 26, 2008 and March 4, 2008.  (R. 232-33, 264-65.)  These notes are difficult to read, but reflect complaints of low back pain, as well as numbness and tingling in Gray's left leg.  Dr. Lovelace's clinical observations reflect positive straight leg raising tests, and he continued to prescribe pain medications.  The impression of an MRI of Gray's lumbar spine taken on March 7, 2008 stated as follows:  "Mild broad based disc protrusion posteriorly at L4-5 and L5-S1.  These findings are probably not clinically significant.  No extruded disc or nerve root displacement is seen.  No lateral recess or central canal spinal stenosis is seen."  (R. 266.)  Dr. Lovelace completed a two page evaluation of Gray's functional capacity on July 15, 2008.  This evaluation concluded that Gray could stand/walk for about two hours and sit for about four hours, frequently lift ten pounds and occasionally lift twenty pounds.  Dr. Lovelace stated that he  believed that Gray's experience of pain would often interfere with his attention and concentration, that he would have good days and bad days and that he would miss work more than three days a month.  (R. 282-83.)

The ALJ did not have access to medical records from Dr. Lovelace for visits by Gray on July 15, 2008 and November 13, 2008, which consistently noted low back pain, numbness in his left leg, and positive left leg straight leg raise.  On February 2, 2009, Dr. Lovelace wrote a narrative letter consistent with the conclusions in his earlier functional capacity form.  Dr. Lovelace wrote:

> Mr. Gray's complaints are pain during the day with activity and with activities of daily living.  His symptoms correlate with findings on physical examination as well on radiographic studies.  He has localized pain to his lower back area on examination as well as evidence of nerve irritation based on provocative physical exam testing.

(R. 284.)  The medical records for the 2008  visits and the February 2, 2009 letter were sent to the Appeals Council, which summarily concluded that "this information does not provide a basis for changing the Administrative Law Judge's decision."  (R. 2.)

**IV**

Gray argues that the ALJ erred by failing to employ the proper standard in his evaluation of the opinions of claimant's treating physician, Dr. Lovelace, and treating chiropractor, Dr. Welty-Miller.

As to Dr. Lovelace, Gray correctly notes that the treating physician's medical opinions are entitled to great deference. See Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (explaining that courts typically "accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant"); 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources"). In fact, in certain circumstances, the opinion of a treating physician is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). But the opinion of a treating source is not always entitled to great deference or greater weight. Instead, the regulations explain that when an opinion is not given controlling weight, the ALJ will "apply the factors listed [below]…in determining the weight to give the opinion." Id. One of those factors is the length of the treatment relationship. See 20 C.F.R. § 404.1527(d)(2)(i). Other relevant factors include the supportability of the opinion, as determined by the evidence presented by the medical source, and consistency of the opinion with the record as a whole. See 20 C.F.R. § 404.1527(d)(3), (4). For example, contradictory persuasive evidence can discredit a treating physician's opinion. See Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986) ("A treating physician's testimony is ignored *only* if there is persuasive contradictory evidence.") (emphasis in original). Finally, a treating physician's opinion is not given any special deference when the opinion relates to the claimant's

ability to work or her RFC. See 20 C.F.R. § 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as. . . your residual functional capacity. . . the final responsibility for deciding these issues is reserved to the Commissioner.").

In this case, the ALJ determined that the opinion of Dr. Lovelace "is set forth on a checklist/form which, in and of itself, is of little value. Moreover, it is not well-supported and is inconsistent with his treatment records and the other substantial evidence in the record." (R. 20.) The ALJ explains this conclusion as follows: "Dr. Lovelace bases his opinion on claimant's subjective pain complaints and an MRI that shows disc bulges in the lumbar spine. He appears to link disc bulges with claimant's pain complaints, despite the lack of any neurological deficits found on examination or any evidence of nerve root or cord compression in the MRI." (R. 20.)

The ALJ also rejected the opinion of Gray's chiropractor, Dr. Welty-Miller, noting first that she is "not an acceptable medical source," (R. 20), and adding that "[t]he chiropractor mischaracterizes the medical evidence and relies in part on claimant's subjective pain complaints. Still further, the level of treatment the claimant has received to date is not consistent with the opinion nor is the claimant's admitted activities of daily living." (R. 20.) While it is true that under the social security regulations a chiropractor is not an acceptable medical source "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513(a), the regulations allow for evidence from a treating chiropractor "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work." 20 C.F.R. § 404.1513(d).

The ALJ based his RFC determination on the opinions of two state agency physicians who never treated, much less examined, Gray. Further, their assessments, based solely on a review of Gray's medical records, were done before Dr. Lovelace provided his opinion. On January 8, 2007, Dr. Frank M. Johnson concluded that Gray could do light work, with limited pushing and pulling

9

with his legs. (R. 225.) Dr. Michael Hartman agreed on April 26, 2007. (R. 246.) As set forth in SSA regulations, these two medical records reviews formed the basis for the state agency's denial of benefits at the initial application and reconsideration stages. As such, neither of these early evaluations considered Gray's treatment in the second half of 2007 or at any time during 2008.

Cursorily rejecting the opinions of Gray's treating sources, the ALJ appears to base his conclusion that Gray is not disabled on his own judgment, which appears to be rather clinical in nature. The ALJ states:

> Severe chronic pain will often result in certain observable manifestations such as loss of weight, due to loss of appetite from incessant pain (or weight gain due to inactivity from pain), muscular atrophy due to muscle guarding, muscular spasms, the use of assistive devices, prolonged bed rest, or adverse neurologic signs. In the present case, no such signs exist. The record fails to demonstrate the presence of any pathological clinical signs, significant medical findings, or any neurologic abnormalities that would establish the existence of a pattern of pain or such severity as to prevent the claimant from engaging in any work on a sustained basis.
>
> According to the record, the claimant reports no current use of physical therapy, biofeedback, a TENS unit, a dorsal stimulator, a morphine pump, acupuncture, massage therapy, braces or splints, special creams or ointments, herbal remedies, chiropractic adjustments, hot/cold packs, etc. for pain relief.

(R. 21.)

There are three problems with the ALJ's analysis. First, from a factual standpoint, the ALJ's assessment is not entirely consistent with the evidence of record. The ALJ states that there are no signs of muscle spasms, ignoring that moderate to severe muscle spasms are mentioned in Dr. Welty-Miller's letter and in virtually all of Gray's chiropractic treatment records. (R. 244; Ex. A to Gray's Memorandum in Support of Motion for Summary Judgment, Dkt. # 17.) Further, the ALJ makes no mention of Dr. Lovelace's consistent positive straight leg raising findings, and

instead remarks that there are no "adverse neurologic signs . . . or any neurologic abnormalities." (R. 21.)

Second, the ALJ's assertion that "[s]evere chronic pain will often result in certain observable manifestations," (R. 21), appears to run afoul of the Fourth Circuit's admonition to the contrary in Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996), where the court held that objective evidence of pain is not required. The court explained:

> There is, of course, a fundamental difference between objective evidence of pain (which is not required) and objective evidence of a medical condition which could cause the pain alleged (which is). Requirement of the former is obviously not the law, for the simple reason that pain, a subjective phenomenon, although sometimes objectively verifiable, often will not be. Objective evidence of the pain the claimant feels is thus, quite sensibly, not required for entitlement to benefits. 20 C.F.R. §§ 416.929(c) & 404.1529(c). However, the latter – objective evidence of a condition "which could reasonably be expected to produce the pain or other symptoms alleged" – equally sensibly, is required by the Secretary's regulation. 20 C.F.R. §§ 416.929(b) & 404.1529(b).

Finally, the ALJ's statement as to "observable manifestations" of pain appears to reflect his own medical or clinical judgment for which there is no support in the record.

To be sure, the administrative record contains evidence tending to suggest that Gray was not totally disabled as of his claimed onset date. At that time, he had just been laid off from his job as a mower operator, and there is nothing to support any injury or exacerbation during this period. The objective testing done on Gray revealed only minor findings. There has been no suggestion of surgery, and Gray's treatment has been conservative. Two state agency doctors have completed RFC assessments concluding that he is capable of performing light work. It is certainly plausible, upon consideration of a complete and adequate record, that the Commissioner's decision to deny disability benefits would pass muster.

On this record, however, it is difficult to consider the evidence supporting the ALJ's decision in this case to be substantial. Both Drs. Lovelace and Welty-Miller, who treated Gray for his low back pain, have performed assessments indicating that he cannot work. The state agency doctors did not have the benefit of reviewing records for nearly half of Dr. Lovelace's treatment of Gray nor his disability opinion. In addition to the factual flaws noted above, the ALJ refers to Dr. Lovelace as a family physician (R. 19), when in fact he is a treating orthopedic specialist. The ALJ discounts Dr. Lovelace's opinion as being a "checklist/form" (R. 20), without recognizing that most of the RFC assessments in social security cases, including those done by the state agency doctors in this case, are the same sorts of "checklist/forms." Further, even though the ALJ rejected the opinion of Dr. Lovelace as being a "checklist/form," when a written narrative opinion by Dr. Lovelace was presented to the Appeals Council, it was rejected without explanation. Finally, it appears that the decision not to follow the treating source opinions was not grounded in the evidence of record in this case, but rather was based on the ALJ's own clinical conjecture as to how severe chronic pain manifests itself. (R. 21.) The social security regulations do not permit an ALJ to substitute his own clinical judgment for that of a treating source. Rather, the opinion of a claimant's treating physician is entitled to great weight because the treating physician has examined the applicant and has a treatment relationship with him. It may be given less weight if there is persuasive contradictory evidence. Hines v. Barnhart, 453 F.3d at 563.

On balance, the court cannot conclude on the record before it in this case that the ALJ's decision is supported by substantial evidence. It may well be that at the end of the day, Gray is determined by the Commissioner not to be disabled. However, the ALJ's requirement that Gray's pain have "certain observable manifestations" is inconsistent with the Fourth Circuit's ruling in Craig v. Chater, and his clinical conjecture does not constitute persuasive contradictory evidence

sufficient to disregard the treating physician's opinion. While substantial evidence may be grounded in the opinion of a non-examining physician, Smith v. Schweicker, 795 F.2d 343, 345 (4th Cir. 1986), the assessments of the state agency physicians in this case were done prior to Dr. Lovelace's opinion and without the benefit of a number of his treatment records. Because the state agency assessments were performed on an incomplete record, they cannot be considered to be particularly persuasive. As such, this case must be remanded for further administrative development, including consideration of the information presented to the Appeals Council, along with a consultative examination of Gray by a back specialist such as an orthopedic surgeon or neurosurgeon.

Accordingly, plaintiff's Motion for Summary Judgment (Dkt. # 16) is **GRANTED** and defendant's Motion for Summary Judgment (Dkt. # 20) is **DENIED**.

An appropriate Order will be entered reversing and remanding this case pursuant to sentence four of 42 U.S.C. § 405(g).

Entered: October 7, 2010.

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States Magistrate Judge